UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF MISSISSIPPI

IN RE: AMY C. WEATHERS           CASE NO. 08-14547-DWH
                                           CHAPTER 7

DUTCH PHARMACIES, INC.                          PLAINTIFF

VERSUS                           ADV. PROC. NO. 11-01029-DWH

AMY C. WEATHERS                                 DEFENDANT

OPINION

On consideration before the court is a motion for summary judgment filed by Dutch Pharmacies, Inc., ("Dutch"), regarding its complaint against the defendant/debtor, Amy C. Weathers, ("Weathers"); a response to said motion having been filed by Weathers; and the court, having heard and considered same, hereby finds as follows, to-wit:

I.

The court has jurisdiction of the parties to and the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(A), (I), and (O).

II.

Weathers is a licensed pharmacist in the State of Mississippi. On March 5, 2007, she and two others organized the Pharmacy Management Group, LLC, ("PMG"), for the purpose of owning and operating retail pharmacy stores in North Mississippi, including two stores located in Columbus, Mississippi. During 2008, PMG began to experience severe financial problems and defaulted on its obligations to its creditors. Most of PMG's debt was personally guaranteed by Weathers.

On September 8, 2008, Dutch entered into an Asset Purchase Agreement with PMG, pursuant to which it acquired substantially all of the assets of PMG's Columbus stores. As a part of the transaction, Weathers entered into an Employment Agreement to work for Dutch as a pharmacist at the Columbus stores for a period of ten years. (A copy of the agreement was attached as Exhibit A to the complaint.) Paragraph 11 in the Employment Agreement contained a covenant not to compete, stating that for a two (2) year period following the termination of her employment with Dutch, Weathers would not have any interest or affiliation with any type of entity that "engages in or conducts a retail pharmacy business anywhere within a thirty (30) mile radius" of Lowndes County, Mississippi. Paragraph 13 in the agreement contained a liquidated damages clause which would be applicable if Weathers terminated her employment before the expiration of the ten year employment term.

On October 30, 2008, Weathers filed a voluntary Chapter 7 bankruptcy petition with this court. It is undisputed that she did not include Dutch as a creditor in her Chapter 7 schedules, nor did she list the Employment Agreement in her Schedule G which requires the disclosure of a debtor's executory contracts and unexpired leases. According to Dutch, at no time did Weathers even disclose the existence of her bankruptcy case. As such, Dutch asserts that it did not receive notice or have actual knowledge that Weathers was in bankruptcy during the entire pendency of her bankruptcy case. Weathers, however, contends that this is not correct. It is also undisputed that neither Weathers nor the Chapter 7 Trustee took any action to either assume or reject the Employment Agreement.

On February 17, 2009, Weathers received her Chapter 7 discharge, and on February 24, 2009, her bankruptcy case was closed. Weathers remained employed with Dutch throughout the

course of her bankruptcy case, as well as, for more than a year after her case was closed. On July 10, 2010, Weathers informed Dutch that she intended to voluntarily terminate her employment effective July 24, 2010. She did not assert any cause for terminating her employment, and, soon thereafter, she became employed as a pharmacist with RXS, a retail pharmacy that competes with Dutch in Columbus, Mississippi.

Dutch's complaint against Weathers seeks the following relief:

1. Declaring that Weathers has assumed her obligations pursuant to the Employment Agreement and/or she is estopped by her conduct to deny that her obligations under Paragraphs 11 and 13 of the Employment Agreement remain in full force and effect; and

2. Declaring that Weathers' obligations pursuant to the Employment Agreement were not discharged pursuant to 11 U.S.C. § 523(a)(3) and/or that Dutch's rights to enforce Debtor's obligations under the Employment Agreement were not dischargeable claims under the Bankruptcy Code.

### III.

Summary judgment is properly granted when pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Bankruptcy Rule 7056; Miss. Bankr. L.R. 7056-1. The court must examine each issue in a light most favorable to the nonmoving party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Phillips v. OKC Corp.*, 812 F.2d 265 (5th Cir. 1987); *Putman v. Insurance Co. of North America*, 673 F. Supp. 171 (N.D. Miss. 1987).

An issue is genuine if "there is sufficient evidence favoring the nonmoving party for a fact finder to find for that party." *Phillips*, 812 F.2d at 273. A fact is material if it would "affect the outcome of the lawsuit under the governing substantive law." *Phillips*, 812 F.2d at 273.

IV.

As noted hereinabove, Weathers did not disclose the Employment Agreement on her schedule of executory contracts and unexpired leases. (Schedule G) She did not list Dutch as a creditor in her schedules of creditors (Schedules D and F) or on her creditor matrix. Joe Gillis, Dutch's President, in his sworn affidavit stated that Dutch received no notification from the Bankruptcy Court or from Weathers or her counsel that she was in bankruptcy. According to Dutch, the first time Weathers' bankruptcy case was mentioned was in July, 2010, after she quit her job and commenced employment with a competitor. When Dutch attempted to enforce the non-compete provisions in the Employment Agreement, Weathers asserted that the Employment Agreement was unenforceable because it had been discharged in her bankruptcy case. *See* Paragraphs 7 and 11 in Gillis' affidavit.

Fed. R. Bankr. P. 1007(a) requires a debtor to include all creditors in his or her bankruptcy schedules because a discharge does not release a debtor from a debt that has not been scheduled in time to permit the affected creditor to timely file of a proof of claim. Collier on Bankruptcy § 521.03[3]. Any claim that Dutch might have had for damages as a result of Weathers' violation of the covenant not to compete or the liquidated damages clause could not have been discharged in her bankruptcy case because no claims even existed until July, 2010, when Weathers unilaterally terminated her employment with Dutch and began her employment with RXS, approximately 17 months after her bankruptcy case had been closed. Consequently,

4

Weathers' argument that non-existent claims were discharged by her bankruptcy filing is completely disingenuous. The alleged breaches of the non-compete provision and the liquidated damages clause clearly are post-bankruptcy causes of action. A discharge in a Chapter 7 bankruptcy case primarily applies to debts that arose before the petition was filed. It is not a "get out of jail free" card to excuse possible breaches of contractual provisions that occur long after the bankruptcy case is over.

Additionally, the unscheduled Employment Agreement was neither assumed or rejected while Weathers' bankruptcy case was pending. 11 U.S.C. § 365(a) gives a trustee the authority to assume or reject an executory contract of the debtor. Collier on Bankruptcy § 365.02[1]. Insofar as a Chapter 7 bankruptcy case is concerned, an executory contract that is neither assumed nor rejected during the statutory 60-day period is "deemed rejected." *Id.* at § 365.05[1]. However, in order for the "deemed" rejection to apply, the executory contract, i.e., the Employment Agreement, must have been scheduled by Weathers, and Dutch must have had notice of the bankruptcy filing in time to demand that the contract be scheduled and either assumed or rejected. Weathers was certainly cognizant of this requirement since she scheduled an unexpired lease agreement with Puget Sound Leasing on her Schedule G.

Because Weathers did not schedule the Employment Agreement and because she continued to enjoy the benefits of gainful employment pursuant to the agreement both during and after her bankruptcy case, she did not reject the agreement by virtue of her bankruptcy filing. To conclude otherwise would pervert the intent of § 365(d)(1) of the Bankruptcy Code. Indeed, the court finds that Weathers tacitly assumed the provisions of the Employment Agreement

5

while her case was pending and long thereafter. Consequently, the enforcement of the agreement is not barred by applicable bankruptcy law.

In support of the foregoing conclusion, the court relies on the reasoning set forth in *In re Zuniga*, 287 B.R. 201 (Bankr. E.D.Mo. 2001). While Weathers argues that *Zuniga* is no longer good law as a result of the decision in *Permacel Kansas City, Inc. v. Kohler Co.*, 2010 WL 2516924 (W.D.Mo. 2010), this is simply incorrect. Even the court in *Permacel* acknowledged that the factual circumstances were distinguishable from those in *Zuniga*.

V.

In keeping with the above analysis, the court concludes that there are no genuine issues of material fact remaining in dispute in this proceeding. As such, Dutch's motion for summary judgment is well taken.

A separate order will be entered consistent with this opinion to the effect that no claims arising under the aforesaid Employment Agreement were discharged or rejected by Weathers during her bankruptcy case. Consequently, no applicable bankruptcy law bars the enforcement of the Employment Agreement, specifically the non-compete provision and the liquidated damages provision, in a state court forum of competent jurisdiction. The opinion of this court, however, is not to be considered a comment on the merits of the enforceability of either provision.

This the 26th day of October, 2011.

DAVID W. HOUSTON, III
UNITED STATES BANKRUPTCY JUDGE